**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

| | |
|---|---|
| **Bautech USA, Inc.** | |
| **Plaintiff,** | |
| **v.** | **CASE NO: _____** |
| **Resolve Equipment, Inc.; Resolve Marine Group, Inc.; Olsen Associates, Inc.; APTIM Coastal Planning & Engineering, LLC; Skyrise Engineering & Testing, LLC; and Federal Insurance Company.** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |
| _____/ | |

**COMPLAINT**

Plaintiff, Bautech USA, Inc. files this complaint against Resolve Equipment, Inc., Resolve Marine Group, Inc., Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, Skyrise Engineering & Testing, LLC and Federal Insurance Company (collectively, the "Defendants"), and states as follows:

**PARTIES**

1.      Plaintiff Bautech USA, Inc. ("Bautech" or "Plaintiff") is a corporation formed under the laws of the State of Delaware with its principal place of business in Guatemala City, Guatemala.

2.      Defendant Resolve Equipment, Inc. ("Resolve Equipment") is a corporation formed under the laws of the State of Florida, with its principal address at 1510 SE 17 Street Suite 400, Fort Lauderdale, Florida 33316.

3.      Defendant Resolve Marine Group, Inc. ("Resolve Marine")("Resolve Equipment" and "Resolve Marine" sometimes collectively referred to as "Resolve") is a corporation formed

under the laws of the State of Florida, with its principal address at 3301 S.E. 14th Avenue, Fort Lauderdale, Florida 33316.

4.       Defendant Olsen Associates, Inc. ("Olsen") is a corporation formed under the laws of State of Florida, with its principal address at 2618 Herschel Street, Jacksonville, Florida 32204.

5.       Defendant APTIM Coastal Planning & Engineering, LLC ("APTIM") is a limited liability company formed under the laws of the State of Florida, with its principal address at 6401 Congress Avenue, Suite 140, Boca Raton, Florida 33487. Upon information and belief, each of APTIM's members are residents, and therefore citizens for jurisdictional purposes, of Florida.

6.       Defendant Skyrise Engineering & Testing, LLC ("Skyrise") is a limited liability company formed under the laws of the State of Florida, with its principal address at 4121 Southwest 47th Avenue, Davie, Florida 33314.  Upon information and belief, each of Skyrise's members are residents, and therefore citizens for jurisdictional purposes, of Florida.

7.       Defendant Federal Insurance Company ("FIC") is a corporation incorporated in the State of Indiana, with its principal address at One American Square Suite 2600, Indianapolis, Indiana 46282.

8.       The Complaint at times collectively refers to Olsen, APTIM and Skyrise are as the "County Inspectors" or the "County Consultants."

## JURISDICTION AND VENUE

9.        This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), *et seq*., because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court has personal jurisdiction over each of the Defendants.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and all damages occurred in this judicial district.

## FACTS

**A.  Bautech's Subcontract to Fabricate Reef Mitigation Units on the Project.**

11.     Bautech is a concrete fabricator. Sergio Prahl, a Guatemalan national, owns Bautech and established Bautech to undertake infrastructure projects in the United States.

12.     In December 2019, Resolve Equipment and Broward County (the "County") entered into a contract (the "Prime Contract") to install offshore reef mitigation units for the "Segment II Nearshore Hardbottom Mitigation" project (the "Project"). The County received significant federal funding for the Project.

13.     On June 8, 2020, Resolve Equipment and FIC entered into Bond Number K40382185 (the "Payment Bond"), guaranteeing, *inter alia*, Resolve Equipment's obligation to promptly pay all claimants for labor and materials in the Prime Contract's performance.

14.     Bautech responded to Resolve Equipment's bid solicitation for the Project in reliance of the express performance standards of the bid solicitation for the Units.

15.     Bautech won the bid and entered into the Subcontract with Resolve Equipment on October 23, 2020.

16.     Under the Subcontract, Bautech was to fabricate reef mitigation units (the "Units"), large, modular "dry-cast" concrete blocks with limestone rocks (called "rip-rap") installed on top. The Units mitigate the loss of hardbottom and reef, providing marine life with a stable foundation to grow and to form new reefs.

17.     Bautech agreed to fabricate and deliver completed Units at the port or at its facility and delivered to the port. Resolve was then responsible for installing Bautech's completed Units on the seabed offshore of North Fort Lauderdale.

18.     Bautech's finished Units looked like this:



*See* https://www.broward.org/Beaches/Pages/Segment2.aspx.

**B.  Bautech Begins Performance Under the Subcontract.**

19.     After consummating the Subcontract, Bautech invested significantly in performing the work, procuring and commissioning equipment and machinery, and hiring additional labor.

20.     Bautech started fabricating Units for Resolve under the Subcontract in January 2021.

21.     Resolve hired the County Consultants to consult on the Project related to the requirements of the Units and to eventually inspect Bautech's finished Units.

22.     Unfortunately, Resolve's County Consultants lacked the knowledge and experience to detail the characteristic of the Units. Nor were the County Consultants familiar with the standards and requirements they placed in the Subcontract in order to confirm that the Units complied therewith.

23.     As a result, the County Consultants (and later, Resolve) unfairly and in bad faith rejected completed Units that conformed entirely to the Subcontract requirements, often for non-contractual and non-material issues.

24.     In the planning phases of the Project, the County retained Christopher Creed and Olsen Engineering ("Olsen") as its primary engineering consulting firm (and one of the key decision-makers) on the Project.

25.     Olsen created the County's original design and specifications. Almost immediately into the production process, Bautech discovered issues with Olsen's design and specifications. Specifically, Bautech bid the Project to use a "dry cast" concrete base. Resolve was aware of and approved Bautech's "dry cast" concrete base and agreed that Bautech's "dry cast" conformed to the Subcontract requirements.

26.     Despite the fact that the Resolve's solicitation for the Project allowed the Subcontractor to use a "dry cast" process (as Bautech used), Olsen's design and specifications considered a Unit base utilizing only a "wet cast" process (among other errors).

27.     In an effort to accommodate Olsen's deficient and non-conforming design and specifications, Bautech proposed a supplementation to the Olsen design in good faith to ensure the Units would satisfy the Subcontract's performance standards.

28.     Bautech's revised the design to add two strands of additional rebar around the Unit base, resulting in increased costs per Unit.

29.     Bautech produced five (5) sample Units with this suggested change to the Unit base construction. Both Olsen and Resolve inspected and accepted the Units presented with the additional rebar.

30.     Bautech sought a change order to reflect its additional and unanticipated manufacturing costs. Olsen and Resolve wrongfully denied increased compensation requested by Bautech in the change order.

31.     Despite Resolve abrogating its responsibility to consider and approve meritorious change orders under the Subcontract, Bautech continued production and initially fabricated 1,327 Units which Olsen and Resolve accepted and installed on the sea floor in 2021.

C.   **The County Inspectors and Resolve, Through Incompetence and Intentional Misconduct,  Reject Bautech's Units for Reasons Outside of the Contract Specifications and Industry Standards.**

32.     As the Project progressed, Bautech realized that the County Inspectors and Resolve were generally unfamiliar with Bautech's dry cast construction method, nor were the County Inspectors and Resolve capable of determining that Bautech's Units complied with the Subcontract's requirements.

33.     Almost none of the inspectors the County Inspectors and Resolve chose to dispatch physically to the site were professional engineers or licensed engineers. Many lacked experience in construction/manufacturing. Perhaps shockingly, many of the County Inspectors lacked any experience with concrete manufacturing or concrete products.

34.     The County Inspectors' inexperience and incompetence with evaluating Bautech's concrete manufacturing processes led to the County Inspectors and Resolve rejecting completed Bautech Units for alleged "delamination."

35.     Neither County Inspectors nor Resolve could articulate how the alleged "delamination" was in any way a defect or in any way violated the criteria set forth in the Subcontract. Nor could they demonstrate how the alleged observed "delamination" in any way made the completed Units unfit for their intended purpose: for placement in the ocean as a foundation and barrier that would protect the shoreline and on which marine life could grow and prosper.

36.     At the time, the County Inspectors (Olsen) observed 13 Units (out of more than 2,000 Bautech had already produced) that allegedly lacked proper epoxy application. Olsen also claimed that Bautech had used a deteriorating foam in its mold for these Units. The results, according to Olsen, were unacceptable "delamination" in certain Units that could not be repaired and conclusively ran afoul of the Subcontract.

37.     The County Inspectors (Olsen) were wrong. Indeed, Olsen's comments plainly reflected County Inspectors' and Resolve's unfamiliarity with Bautech's successful manufacturing process.

38.     Based on their erroneous positions pertaining to a small minority of Units, the County Inspectors and Resolve began to wrongfully reject all Units and withhold payments Bautech had rightfully and contractually earned.

39.     The widespread rejection of Bautech's conforming Units further caused the County to question Bautech and the quality of Bautech's Units.

40.     Bautech could have easily addressed any of these items, if they were issues at all. Bautech acted in good faith to do so—even offering to consider industry standard "repairs" and to replace the foam in its mold (despite the fact that either was unnecessary to do so).

41.     During the largest materials shortage in recent history, Bautech also proposed to order an alternative epoxy product that Bautech assured County Inspectors and Resolve was equally effective for the Bautech's intended completed product. The County Inspectors and Resolve rejected Bautech's efforts and requests regarding epoxy.

42.     Bautech hired multiple concrete engineering experts that demonstrated the Units' conformity. Defendants rejected and ignored the opinions of Bautech's experts. Bautech's independent engineering consultants confirmed that Bautech's specially fabricated Units conformed entirely with the Subcontract requirements and met all of the County's requirements for the reef restoration Project.

43.     Unfortunately, the County Inspectors and Resolve—now locked into their erroneous positions about the conformity and quality of Bautech's Units—continued their efforts to undermine Bautech's manufacturing processes and completed Units.

44.     What was initially best described as County Inspectors' and Resolve's ignorance of Bautech's manufacturing methods, soon morphed into incompetence with regard to field inspections and, later, into County Inspector's and Resolve's actual intentional and malicious efforts to cover up their own incompetence regardless of how it damaged Bautech.

45.     In order to confirm their prior findings and to justify the expenses of their ongoing "inspections," these County Inspectors and Resolve implemented a campaign to excessively scrutinize Bautech's Units during production.

46.     They began insisting on the daily inspection of every level of production. They began asserting that non-material byproducts of items a dry cast application, such as minuscule (inch-long) hairline cracks and bubbles on the Units' exterior, indicated widespread faulty production.

47.    The Defendants maintained these erroneous assertions even when Bautech's consultants offered opinions, testing data and independent reports confirming that Bautech's product met and exceeded the Subcontract requirements.

48.    On September 2, 2021, after another blanket rejection of hundreds of Units, the County Inspectors and Resolve informed Bautech that no further Units would be approved without Bautech implementing an "enhanced" QA/QC plan.

49.    The Subcontract called for no such plan. Nor did the Defendants' demand for an "enhanced plan" specify in any way what sort of QA/QC plan the County, Resolve or the County Inspectors sought.

50.    Nonetheless, on September 7, 2021, in further demonstration of its good faith efforts to compete its manufacture of Units, and confident in its process and the quality of the Units, Bautech proposed an enhanced Quality Control plan per the Defendants' extra-contractual requests.

51.    Like every other proposal from Bautech since the initial improper rejection, the County Inspectors and Resolve unreasonably rejected these Bautech's new QA/QC plan without explanation.

52.    Instead, the County Inspectors and Resolve maintained their refusal to approve any more of Bautech's conforming Units, while at the same time demanding that Bautech continue to produce (the same) Units and maintain the contract schedule.

D.    **Resolve Wrongfully Issues Notices to Cure, Wrongfully Refuses to Pay Bautech, and Wrongfully Terminates Bautech.**

53.    As their animosity towards Bautech continued, Resolve issued two defective and unlawful Notices to Cure on September 10 and September 13, 2021.

54.     Bautech tried to discuss its revised QA/QC plan (and plan to repair the observed "delamination") with the County Inspectors and Resolve. Despite the fact that the alleged deficiencies in Bautech's completed Units were superficial, had no impact on the Unit's utility, and had no impact on the Units' conformity with the Subcontract requirements, Bautech's agreed plan proposed addressing any blemishes on the Units according to industry standard.

55.     However, the County Inspectors declined to meet with Bautech.

56.     On November 12, 2021, after months of delay at the hands of the County Inspectors and Resolve, Resolve finally approved Bautech's repair plan.

57.     Without explanation, and despite months of Bautech gathering and disclosing information showing the Units' conformity in all respects with the Subcontract requirements (and even after Resolve's approval), the County Inspectors unilaterally rejected Bautech's repair plan and stated that the County would only accept a new repair protocol prepared by the County Inspectors.

58.     The County Inspectors' proposed protocol would significantly complicate Bautech's manufacturing processes, delay delivery of completed Units, and further increase Bautech's Project costs.

59.     Bautech requested an additive change order to accommodate the increased (and unnecessary, and arbitrary) new requirements.

60.     The County Inspectors and Resolve refused to approve any change order associated with the new and additional repair work.

61.     Resolve Equipment sent a Notice of Termination wrongfully terminating Bautech on March 22, 2022 (the "First Notice of Termination") and calling on Bautech's surety to perform.

**E.  The County Inspectors and Resolve Approve Once Rejected Units and Welcome Bautech Back to the Project.**

62.     Months after the County Inspectors and Resolve wrongfully terminated Bautech, Olsen accepted 274 previously rejected Units that had been neither repaired nor modified.

63.     Moreover, the County Inspectors and Resolve had determined that no other contractor offered the terms that Bautech offered under the Subcontract.

64.     Therefore, the County Inspectors and Resolve invited Bautech back to the Project and stated their commitment that the terms of the Subcontract would govern Bautech's contractual requirements until Bautech completed its scope of work.

65.     Relying on this promise, Bautech accepted a Completion Agreement with its performance surety, Penn National Insurance Company. Bautech also remobilized and began fabricating Units again in January 2023, producing approximately 600 more Units after rejoining the Project.

66.     However, mere days after remobilization, the County Inspectors and Resolve resumed their pattern of hostility, harassment, and over-inspection of Bautech's manufacturing processes and completed Units.

67.     During Bautech's second mobilization, the County Inspectors and Resolve began rejecting Units based on a new theory: that the Units lacked proper concrete "consolidation," evidenced by "honeycombing" or surface "air pockets" on the outsides of the bases of a few Units. Contradictorily, these aesthetic features also existed in previous units deployed in the ocean and in units which were approved and shipped to the port.

68.     The County Inspectors and Resolve began doctoring reports they called "Non-Conforming Reports" or "NCRs," to make sure that if one of the inspectors observed a blemish on a Unit, all the reports stated the same thing regardless of whether the inspector authoring the NCR observed the same alleged blemish.

69.     These fabricated NCRs clearly demonstrate the County Inspectors and Resolve's ongoing hostility towards and harassment of Bautech.

70.     Based on these alleged issues, the County Inspectors and Resolve rejected the vast majority of the additional Units that Bautech manufactured after remobilization. In communications amongst themselves, they called Prahl "incapable" and "unqualified" to produce these Units.

71.     Despite this apparent view, the County Inspectors and Resolve insisted that Bautech continue to produce over 20 Units per day to meet the schedule. The County Inspectors and Resolve also continued to invent and promote new subjective testing and review procedures that had no basis in the Subcontract. One such inspection procedure, a "percolation test," required Bautech to lift and flip the 20-ton base of each unit and to fill it with water.

72.     Despite the additional and arbitrary requirements and Resolve's refusal to approve the additive change order to accommodate Bautech's increased Project costs, Bautech continued producing additional Units in good faith.

73.     In February 2023, with no more storage space at its manufacturing facility for additional Units, Bautech began delivering complete, conforming Units to the port so that Resolve could place the Units into the ocean. The space created would have allowed Bautech to continue meeting County Inspectors' and Resolve's manufacturing demands.

74.     Almost immediately, County Inspectors and Resolve refused to allow Bautech to deliver any additional completed Units to the port and instructed Bautech to cease all further delivery.

75.      By day, Bautech produced conforming Units (to the extent its yard could accommodate storage of additional Units without delivery being accepted at the port)

76.     Meanwhile, the County Inspectors and Resolve spent their days at Bautech incorrectly assessing conforming Units and coordinating vituperative and inflammatory communications to send to Bautech.

77.     The County Inspectors and Resolve actually coined a new term: "unconsolidation." The County Inspectors and Resolve used the term "unconsolidation" to describe the aesthetic blemishes that the independent concrete specialist consultants describe as the natural byproducts of the dry cast process—not fabrication issues or violations of any standard of the Subcontract.

78.     Bautech was forced then to continue gathering evidence from concrete industry leaders, who consistently opined that Bautech's Units were of excellent quality and conformed in all respects to the Subcontract requirements and were fit for their intended purpose: for Broward County to use in the ocean to protect the shoreline and encourage the growth of marine habitat.

79.     The County Inspectors and Resolve simply rejected all independent expert consultants' opinions and refused to alter the inspection/rejection practices.

**F.  <u>Resolve Issues Another Notice of Termination to Bautech.</u>**

80.     On March 6, 2023, Resolve issued its second Notice of Termination and Cure to Bautech, citing its perceived "unconsolidation" of the base of the Units.

81.     The Notice was clearly defective. While the Notice purported to terminate Bautech unless Bautech "cured" the County Inspectors'/Resolve's arbitrary "unconsolidation" assessment, the Notice provided Bautech neither guidance nor specifications of how to "cure" the alleged deficiencies in order to avoid another wrongful termination.

82.     Meanwhile, County Inspectors and Resolve demanded that Bautech continue to produce Units.

83.     Bautech continued to produce Units, in good faith and at the Defendants' insistence.

84.     However, the County Inspectors and Resolve never accepted the additional Units, Nor did County Inspectors and Resolve approve hundreds of conforming Units, which remain at Bautech's manufacturing facility, rejected and unpaid for.

85.     On April 10, 2023, Resolve issued a unilateral deductive change order modifying the number of Units it sought from Bautech down to only 2,080.

86.     To put this into context, Bautech has already produced and delivered more than 2,080 conforming Units prior to Resolve issuing its FIRST wrongful termination.

87.     This deductive change order rendered Bautech's entire remobilization and the involvement of Bautech's bonding company essentially a "black hole" event that Resolve demanded from Bautech resulting in Bautech's substantial financial and reputational damage. The April 10, 2023 deductive change order was sent in a culmination of the County Inspectors' and Resolve's ongoing and pervasive bad faith towards Bautech

88.     The County Inspectors' and Resolve's wrongful and illegal actions include: 1) failing to accept conforming Units; 2) wrongfully terminating Bautech; 3) rehiring Bautech under fraudulent terms and conditions; 4) seeking extra-contractual work standards without additional compensation; and 5) terminating Bautech a second time despite Bautech's good faith performance and delivery of conforming work.

89.     As a result of County Inspectors/Resolves actions in their performance of the Subcontract and Resolve's/FIC's actions in failing to pay Bautech for conforming work resulted in  millions of dollars in damages to Bautech.

## COUNT ONE
### (Breach of Contract -  Resolve Equipment)

90.     Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

91.     This is a cause of action for breach of a written contract, specifically, the Subcontract. The Subcontract is attached as **Exhibit 1**.

92.     Bautech fully performed under the terms of the Subcontract until its wrongful termination.

93.     Defendant Resolve failed to act in good faith and to deal fairly with Bautech during the course of the performance of the Subcontract as stated hereinabove.

94.     Defendant Resolve's breaches of the Subcontract include, *inter alia*, providing faulty designs and specifications for the Units; failing to properly inspect the Units for conformance with the Subcontract; failing to accept Units that were produced in conformance with the Subcontract; failing to pay Bautech for work completed; delaying Bautech's work; failing to properly consider change orders; TWICE improperly terminating Bautech; and unilaterally issuing a deductive change order without accommodating the additional costs that Resolve demanded Bautech incur

95.     As a result of Resolve's breaches under the terms of the Subcontract, Bautech has suffered damages, including but not limited to; loss of revenue resulting from unpaid work on the Project; not being paid for change orders or costs incurred due to delays or additional work; loss of the benefit of its bargain; delay damages; lost opportunities; and losses from other third-party claims.

96.     Bautech has hired undersigned counsel and the Burr & Forman LLP law firm to represent Bautech in this action. The Subcontract allows for reasonable prevailing party attorneys' fees and costs for which Resolve Equipment, Inc. is liable to Bautech.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that, after a jury trial, this Court award a judgment against Defendant Resolve Equipment, Inc. for compensatory

damages, punitive damages, interest, costs, reasonable attorneys' fees, and any such other and further relief as this Court deems just and proper.

## COUNT TWO
### (Prompt Pay Act Penalties – Resolve Equipment)

97.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

98.    This is a cause of action for damages for violation of Florida Statute 713.346.

99.    A contract within the meaning of § 713.01 exists between Bautech and Resolve.

100.    The labor and materials provided under the Subcontract are more fully set forth in the Subcontract.

101.    The total contract price was $5,994,300.

102.    Resolve Equipment has paid Bautech $ 2,388,875.

103.    Resolve Equipment owes Bautech $3,605,425 pursuant to on the Subcontract and an additional $1,688,576 for change orders,

104.    Bautech received no dispute of these amounts due within 30 days of the due date.

105.    These funds are now due, plus prejudgment interest at the legal rate, pursuant to Florida Statute § 713.346.

106.    The amount at issue has remained unpaid for over 30 days since Bautech furnished to Resolve—and Resolve accepted—the labor and materials.

107.    Upon information and belief, Resolve received payment for some of the materials and labor at issue at least 30 days prior to the date Bautech filed this Complaint.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that the Court enter judgment against Defendants Resolve Equipment, Inc. for all remedies available under

§713.346(4) Fla. Stat., plus interest, reasonable attorneys' fees and costs pursuant to §713.29 Fla. Stat., and all other and further relief that the Court deems necessary and proper.

## COUNT THREE
### (Breach of Payment Bond - FIC)

108.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

109.    This count states an action to recover amounts due under a surety bond that FIC issued on the Project pursuant to §713.23 or § 713.245, Florida Statutes.

110.    In connection with the Subcontract, Resolve, as contractor, and FIC, as Surety, furnished a payment bond pursuant to §713.23, Florida Statutes, a conditional payment bond pursuant to §713.245, Florida Statutes, or alternatively a common law payment bond. The Bond is attached as **Exhibit 2.**

111.    Bautech provided labor, services, and materials in accordance with the Subcontract.

112.    Bautech duly demanded for payment for its completed work under the terms of the Subcontract. Resolve and FIC have failed and refused to pay amounts owed to Bautech under the Subcontract.

113.    Bautech files this  action within one (1) year of Bautech's last furnishing labor and materials to the Project.

114.    Bautech performed all conditions precedent and statutory prerequisites to recover under the Subcontract, the Bond, and applicable Florida law. Bautech is entitled to recover the full amount due and owing including all statutory penalties, interest, and attorney's fees and costs pursuant to both Florida Statute §713.29 and the terms of the Subcontract, and applicable prejudgment interest. Bautech hired the undersigned counsel and Burr & Forman LLP as its attorneys to prosecute this action.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court render a judgment against Defendant Federal Insurance Company for compensatory damages, interest, costs, reasonable attorneys' fees, and any such other and further relief as this Court deems just and proper.

## COUNT FOUR
### (Negligent Design – Olsen)

115.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

116.    Defendant Olsen owed a duty to Bautech, a performing subcontractor and direct manufacturer of the Units, to properly design the work in accordance with the requisite care and skill that  a design professional must reasonably exercise in the industry and locality.

117.    Olsen breached its duty to provide drawings and notes related to the design that did not meet the relevant standard of care. Had Bautech constructed the Units  per Olsen's design and specifications, the Units would not have met the Subcontract's performance standards.

118.    Because of this negligent action or omission, Bautech had to re-engineer the drawings for the Units and incurred additional costs in producing the Units in accordance with the corrected design. When Bautech submitted a change order to address the additional cost per Unit, Resolve rejected the change order. Bautech had to produce the more expensive Units without additional compensation in contravention to the Subcontract terms, and in violation of Florida law.

119.    As a proximate result of the aforementioned breaches of duty, Bautech suffered damages, including but not limited to, additional costs resulting from the act to correct the design, the additional costs to manufacture Units under a different design scheme than the design Olsen set forth in the Subcontract, and other consequences that flowed from the required changes..

120.     Neither Resolve nor its surety FIC compensated Bautech for the additional work and costs.

121.     Olsen is liable to Bautech for any additional uncompensated costs associated with the corrections necessary to accommodate the Subcontract requirements resulting from Olsen's negligent design and specifications for the Units and for Bautech's Work.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendant Olsen Associates, Inc. for compensatory damages, interest, costs, attorneys' fees and any such other and further relief as this Court deems just and proper.

## COUNT FIVE
### (Negligent Inspection – the County Inspectors and Resolve Marine)

122.     Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

123.     Defendants Olsen, APTIM, and Skyrise (collectively, the "County Inspectors"), each acting as agent/consultants for the County, owed Bautech a duty , as subcontractor and direct manufacturer of the Units, to fairly, truthfully and properly report the status of the Project to the County and others, in accordance with the requisite standard of care required under the law.

124.     Resolve Marine, the parent of Resolve Equipment, also provided personnel for the inspection of the Units Bautech produced. Resolve Marine, through its representatives, owed the same duties to Bautech as those of the County Inspectors described in the preceding paragraph.

125.     The County Inspectors and Resolve Marine breached their duties to Bautech in failing to provide inspection services and reports in accordance with the relevant standard of care.

126.     Had the County Inspectors and Resolve Marine acted fairly, reasonably, truthfully and properly, they would have approved Bautech's Units and would have determined that Bautech's Units conformed in all resect to the performance standards of the Subcontract.

127.    Some of the County Inspectors and Resolve Marine's actions and/or inactions were in such conscious disregard for fairness, the truth and the rights of Bautech that they rose to a level of recklessness and gross negligence.

128.    As a proximate result of the aforementioned breaches of duty, Bautech suffered damages, including but not limited to, having not been paid for its work on the Project, not being paid for change orders or costs incurred due to delays or additional work, loss of the benefit of its bargain, additional lost business opportunities, and other losses from third-party claims.

129.    Bautech has hired undersigned counsel and Burr & Forman LLP to prosecute this action and has agreed to pay its attorneys' a reasonable fee, plus costs for which the defendants are liable to Bautech under Florida law.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendants Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, Skyrise Engineering & Testing, LLC and Resolve Marine Group, Inc., jointly and severally, for compensatory damages, punitive damages, interest, costs, reasonable attorneys' fees as allowable under the Subcontract and Florida law, and any such other and further relief as this Court deems just and proper.

## COUNT SIX
### (Defamation – the County Inspectors and Resolve)

130.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

131.    Defendants Resolve Equipment, Resolve Marine, Olsen, APTIM, and Skyrise communicated false and defamatory statements to third parties regarding Bautech and its suitability to work, including but not limited to County officials, representatives of Bautech's surety, Penn National, and Penn National's consultant, Beacon Consulting Group. Included in

these communications were untrue statements regarding Bautech and its leadership, stating that Bautech was unprofessional, variously "dumb" or "stupid," couldn't speak English, liars, using unsuitable materials, not maintaining safety measures, billing for work not supplied, inexperienced in the concrete industry, incapable of performing concrete work, and incapable of performing under the Subcontract.

132.   These statements were false when the above-named Defendants made the statements. These statements remain false. The Defendants made these statements with knowledge of their falsity, or these Defendants acted with negligent disregard for the truth of such statements.

133.   Contrary to the Defendant's statements, Bautech and its personnel are experts in concrete and innovative in their processes. While these Defendants penned email after email from their desks, Bautech and its personnel worked capably, tirelessly and unrequitedly on this Project to produce Units for the County and Resolve that met or exceeded all requirements in the Resolve/Bautech Subcontract.

134.   As a result of these Defendants' false and defamatory statements, Bautech has suffered damages, including but not limited to, loss of opportunity, loss of goodwill, loss of business relationships, damages related to and recoverable under certain bonds, and losses experienced due to claims of third-parties acting or refusing  to act after being told these falsities.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court render a judgment against Defendants Resolve Equipment, Inc., Resolve Marine Group, Inc., Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC and Skyrise Engineering & Testing, LLC, jointly and severally, for compensatory damages, punitive damages, interest, costs, attorneys' fees available under the Subcontract and under Florida law, and any such other and further relief as this Court deems just and proper.

<u>**COUNT SEVEN**</u>
**(Interference with the Contract – the County Inspectors and Resolve Marine)**

135.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

136.    Bautech and Resolve entered into the Subcontract.

137.    Defendants Olsen, APTIM, Skyrise and Resolve Marine, each knowing of the Subcontract, intentionally and unjustifiably interfered with the Subcontract, by, *inter alia*, providing inadequate, improper or outright falsified inspection services and reporting of the Project and otherwise inhibiting Bautech's work and production.

138.    As a proximate cause of these unjustifiable acts of interference, Bautech has suffered damages, including but not limited to, having not been paid for work supplied to the Project, additional costs for delays and additive scope, loss of the benefit of its bargain, other lost opportunities, and losses experienced due to claims of third-parties.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendants Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, Skyrise Engineering & Testing, LLC, and Resolve Marine Group, Inc., jointly and severally, for compensatory damages, punitive damages, interest, costs, attorneys' fees, and any such other and further relief as this Court deems just and proper.

<u>**COUNT EIGHT**</u>
**(Misrepresentation – Resolve and the County Inspectors)**

139.    Bautech adopts and incorporates the allegations of the preceding paragraphs the Complaint as if fully set forth herein.

140.    Defendants Resolve Equipment, Resolve Marine and the County Inspectors knowingly made misrepresentations of material fact to Bautech, both orally and in writing,

pertaining to their promises to adhere to the standards of the Subcontract in inspecting, approving and accepting Units produced as part of Bautech's putative remobilization.

141.    These Defendants knowingly made these misrepresentations in order to induce Bautech to remobilize, continue working and to continue to incur costs to produce Units pursuant to the Subcontract..

142.    At the time the above-named Defendants made these misrepresentations, these Defendants knew they were false.

143.    In fact, these Defendants made these misrepresentations in order to create a false process with the sole purpose of attempting to create a scenario where Resolve could reject Bautech's Units, terminate Bautech, and then acquire the Units for use without having to pay Bautech.

144.    As part of this scheme to defraud Bautech, these Defendants falsified records, defamed Bautech, intentionally rejected conforming Units, and created false claims against Bautech.

145.    The Defendants' promises and assurances induced Bautech to remobilize and to manufacture an additional 600 Units.

146.    Resolve never paid Bautech for these Units.

147.    Bautech acted justifiably in relying upon the misrepresentations, in remobilizing, and in producing the 600 requested Units.

148.    Bautech acted justifiably in relying upon the misrepresentations, in remobilizing and in producing.

149.    As a proximate cause of these misrepresentations, Bautech has suffered damages, including but not limited to, having not been paid for work supplied to the Project, additional costs

for delays and additive scope, loss of the benefit of its bargain, other lost opportunities, and losses experienced due to claims of third-parties.

150.    Bautech hired undersigned counsel and Burr & Forman LLP to represent it in the prosecution of this action and has agreed to pay reasonable attorneys' fees and costs. Resolve is liable to Bautech for reasonable attorneys' fees and costs pursuant to the Subcontract.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendants Resolve Equipment, Inc., Resolve Marine Group, Inc., Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, and Skyrise Engineering & Testing, LLC, jointly and severally, for compensatory damages, punitive damages, interest, costs, reasonable attorneys' fees, and any such other and further relief as this Court deems just and proper.

## COUNT NINE
**(Promissory Estoppel/Detrimental Reliance – Resolve and the County Inspectors)**

151.    Bautech adopts and incorporates the allegations of paragraphs 1-92 of the Complaint as if fully set forth herein.

152.    Defendant Resolve Equipment, Resolve Marine and the County Inspectors made clear and unambiguous statements, both orally and in writing, to Bautech pertaining to their promises to adhere to the standards of the Subcontract in inspecting, approving and accepting Units produced as part of Bautech's putative remobilization.

153.    These Defendants knowingly made these statements in order to induce Bautech to remobilize, continue working and producing.

154.    Their promises and assurances induced Bautech to remobilize and to manufacture and additional 600 Units without payment.

155.    Bautech acted justifiably in relying upon the misrepresentations, in remobilizing and in producing.

156.    Failure to compensate Bautech for its actions in reliance of the statements made would be unfair, inequitable and unjust.

157.    As a proximate cause of its detrimental reliance, Bautech has suffered damages, including but not limited to,  having not been paid for work supplied to the Project, additional costs for delays and additive scope, loss of the benefit of its bargain, other lost opportunities, and losses experienced due to claims of third-parties.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendants Resolve Equipment, Inc., Resolve Marine Group, Inc. Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, and Skyrise Engineering & Testing, LLC, jointly and severally, for compensatory damages, punitive damages, interest, costs, attorneys' fees, and any such other and further relief as this Court deems just and proper.

## COUNT TEN
### (Interference with Contract – the County Inspectors and Resolve)

158.    Bautech adopts and incorporates the allegations of paragraphs 1-92 of the Complaint as if fully set forth herein.

159.    Bautech and Penn National Insurance Company, a third-party surety, entered into a Completion Agreement attendant to Bautech's decision to remobilize. The Completion Agreement is attached as **Exhibit 3.**

160.    Defendants Resolve Equipment, Resolve Marine and the County Inspectors, each aware of the Completion Agreement, have intentionally and unjustifiably interfered with the Completion Agreement, by, *inter alia*,  providing inadequate, improper or outright falsified

inspection services and reporting of the Project and otherwise inhibiting Bautech's work and production.

161.    As a proximate cause of these unjustifiable acts of interference, Bautech has suffered damages, including but not limited to, damages associated with the remobilization, damages related to and recoverable under certain bonds, other lost opportunities, and losses experienced due to claims of third-parties.

WHEREFORE, Plaintiff, Bautech USA, Inc., respectfully requests that this Court award a judgment against Defendants Olsen Associates, Inc., APTIM Coastal Planning & Engineering, LLC, Skyrise Engineering & Testing, LLC, Resolve Equipment, Inc. and Resolve Marine Group, Inc., jointly and severally,  for compensatory damages, punitive damages, interest, costs, attorneys' fees, and any such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Bautech demands a trial by jury against the Defendants on all issues so triable.

Respectfully submitted this 13th day of April, 2023.

/s/ Peter C. Vilmos
Peter C. Vilmos (FBN 75061)
Burr & Forman LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6600
Facsimile:  (407) 540-6601
Email: pvilmos@burr.com
Secondary: nwmosley@burr.com

- and –

Christopher D. Meyer (FBN 56361)
Burr & Forman LLP

190 East Capitol Street, Suite M-100
Jackson, Mississippi  39201
Telephone:  (601) 355-3434
Facsimile:   (601) 355-5150
Email: cmeyer@burr.com
Secondary: sberry@burr.com

*Attorneys for the Plaintiff*