UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60703-CIV-ALTONAGA/Strauss

**BAUTECH USA, INC.**,

    Plaintiff,
v.

**RESOLVE EQUIPMENT, INC.**; *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Resolve Equipment, Inc. ("Resolve Equipment"); Resolve Marine Group, Inc. ("Resolve Marine"); Olsen Associates, Inc. ("Olsen"); Skyrise Engineering & Testing, LLC ("Skyrise"); and the Federal Insurance Company's ("FIC['s]") Joint Motion to Dismiss [ECF No. 19], filed on May 12, 2023. Plaintiff filed a Response [ECF No. 42], to which Defendants filed a Reply [ECF No. 43]. The Court has carefully considered the Amended Complaint [ECF No. 5], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part.

### I.  BACKGROUND

This case arises from a contract dispute concerning the fabrication of offshore reef mitigation units. (*See generally* Am. Compl.). In December 2019, Defendant Resolve Equipment — whose parent company is Resolve Marine — entered into a contract with Broward County for installation of offshore reef mitigation units. (*See id.* ¶¶ 11, 123). Plaintiff, a concrete fabricator, responded to Resolve Equipment's bid solicitation for fabrication of the units, and Plaintiff and Resolve Equipment entered into a Subcontract on October 23, 2020. (*See id.* ¶¶ 10, 14; *see generally id.*, Ex. 1, Subcontract [ECF No. 5-1]).

After significant investments in preparation for the work, Plaintiff began fabricating units under the Subcontract in January 2021.  (*See* Am. Compl.  ¶¶ 18–19). Resolve Equipment and Resolve Marine hired Defendants Olsen and Skyrise to consult on the project and inspect Plaintiff's finished units.  (*See id.* ¶ 20).[1]  According to Plaintiff, Olsen and Skyrise "lacked the knowledge and experience to detail the characteristic of the [u]nits" and were unfamiliar with the "standards and requirements" of the Subcontract.  (*Id.* ¶ 21 (alteration added)).  Consequently, "the County Consultants (and later, Resolve) unfairly and in bad faith rejected completed Units that conformed entirely to the Subcontract requirements, often for noncontractual and non-material issues."  (*Id.* ¶ 22).

Plaintiff implemented design revisions in response to the inspections and sought a change order to reflect additional costs, which Olsen, Resolve Equipment, and Resolve Marine "wrongfully denied[.]"  (*Id.* ¶ 29 (alteration added)).  Nonetheless, Plaintiff continued production, and Olsen, Resolve Equipment, and Resolve Marine accepted and installed 1,327 units.  (*See id.* ¶ 30).  As production progressed, however, Olsen, Skyrise, Resolve Equipment, and Resolve Marine proceeded to "wrongfully reject all [u]nits and withhold payments [Plaintiff] had rightfully and contractually earned."  (*Id.* ¶ 37 (alterations added)).  Plaintiff sought to remedy the supposed deficiencies in various ways, including by proposing an enhanced quality control plan, but the four Defendants continued to reject Plaintiff's units and remediation efforts.  (*See id.* ¶ 49).  Eventually, on March 22, 2022, Resolve Equipment sent Plaintiff a Notice of Termination and called on Plaintiff's surety to perform.  (*See id.* ¶ 60).

---

[1] Plaintiff refers to Olsen and Skyrise collectively as the "County Consultants" or the "County Inspectors," despite alleging these Defendants were hired by Resolve Equipment and Resolve Marine (which Plaintiff collectively refers to as "Resolve") rather than Broward County.  (*See* Am. Compl. ¶¶ 3, 7, 20).

Months later, "Olsen accepted 274 previously rejected units that had been neither repaired nor modified." (*Id.* ¶ 61 (alteration added)). Additionally, because Defendants "determined that no other contractor offered the terms [Plaintiff] offered under the Subcontract[,]" Plaintiff was invited back to the project. (*Id.* ¶¶ 62–63 (alterations added)). Olsen, Skyrise, Resolve Equipment, and Resolve Marine "stated their commitment that the terms of the Subcontract would govern [Plaintiff's] contractual requirements until [Plaintiff] completed its scope of work[;]" on that promise, Plaintiff entered into a Completion Agreement with its performance surety, Penn National Insurance Company. (*Id.* ¶¶ 63–64 (alterations added)).

Despite the parties' new beginning, the problems persisted. Plaintiff alleges the four Defendants "resumed their pattern of hostility, harassment, and over-inspection of [Plaintiff's] manufacturing processes and completed [u]nits[,]" "doctoring reports[,]" rejecting more units, and instructing Plaintiff to "cease all further delivery." (*Id.* ¶¶ 65–73 (alterations added)). Finally, on March 6, 2023, "Resolve issued its second Notice of Termination and Cure" to Plaintiff, followed by a deductive change order. (*Id.* ¶¶ 79, 84). As a result of Defendants' conduct, Plaintiff suffered "millions of dollars in damages[.]" (*Id.* ¶ 88 (alteration added)).

Plaintiff brings ten claims against various configurations of Defendants for: breach of contract, Prompt Pay Act penalties, breach of payment bond, negligent design, negligent inspection, defamation, interference with contract, misrepresentation, and promissory estoppel. (*See generally id.*). Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), asserting it is a shotgun pleading and on the basis of specific arguments regarding nine of Plaintiff's ten claims for relief. (*See generally* Mot.; Reply).

## II. LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

Defendants assert the Amended Complaint is a shotgun pleading. (*See* Mot. 4).[2] Defendants also argue Plaintiff fails to state claims for relief as to nine of the ten claims. (*See generally id.*). Plaintiff concedes Defendants' arguments as to Counts Two, Three, and Six and requests leave to amend these; but it insists its pleading is otherwise sufficient as to the remaining Counts. (*See generally* Resp.). The Court agrees and disagrees with both parties; while the Amended Complaint is a shotgun pleading, once corrected and amended yet again, the existing Counts One, Five, Seven, Nine (in part), and Ten otherwise state plausible claims for relief. The Court explains.[3]

**A. Shotgun Pleading**

Defendants first ask the Court to dismiss the Amended Complaint in its entirety as an improper shotgun pleading. (*See* Mot. 4). Shotgun pleadings, which may take multiple forms, fail to "give the defendant fair notice of what the claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (alteration added); *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "[S]hotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 8:11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (alteration added; citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Defendants state that the Amended Complaint is a shotgun pleading because each Count reincorporates all the preceding paragraphs and Plaintiff "lumps all Defendants together[,]"

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[3] Because Defendant FIC is only implicated in Count Three — which Plaintiff concedes should be dismissed — the Court does not discuss Plaintiff's allegations against FIC.

making it difficult to "discern the claims [Plaintiff] intends to allege against each Defendant versus the claims it intends to allege against several Defendants." (Mot. 4 (alterations added)). Plaintiff insists that it has alleged "specific facts and specific counts" such that the Amended Complaint is "organized and comprehensible" despite repleading facts in every Count. (Resp. 2–3 (quoting *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1319 (S.D. Fla. 2017))). Further, Plaintiff argues the Amended Complaint adequately differentiates which facts and claims pertain to which Defendants. (*See id.* 3).

Defendants are correct that the Amended Complaint is indeed a shotgun pleading. Plaintiff would have done well to concede this point early on and ask for the opportunity to replead. Like "[t]he typical shotgun complaint[,]" the Amended Complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (alterations added); (*see* Am. Compl. ¶¶ 96, 107, 114, 121, 129, 134, 138, 150, 157). On this basis alone, the Amended Complaint is due to be dismissed, with the opportunity to amend.

Nonetheless, the Court addresses the sufficiency of each challenged claim to curtail similar arguments from being raised after a second amended complaint is filed.

### B. Count 1: Breach of Contract

In Count One, Plaintiff brings a breach-of-contract claim — including breach of the implied covenant of good faith and fair dealing — against Defendant Resolve Equipment. (*See* Am. Compl. ¶¶ 89–95). To assert a breach-of-contract claim, "Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th

Cir. 2009) (citation omitted). Defendants challenge the second element, noting that Plaintiff does not identify the specific contract terms Resolve Equipment allegedly breached but instead simply attaches the Subcontract to the Amended Complaint. (*See* Mot. 4–5; Reply 2–3).

For its part, Plaintiff asserts it has "specifically stated the obligations of the Subcontract and the actions that constitute a breach of those obligations." (Resp. 6). Plaintiff alleges that Resolve Equipment's breaches of the Subcontract

> include, *inter alia*, providing faulty designs and specifications for the [u]nits; failing to properly inspect the [u]nits for conformance with the Subcontract; failing to accept [u]nits that were produced in conformance with the Subcontract; failing to pay [Plaintiff] for work completed; delaying [Plaintiff]'s work; failing to properly consider change orders; TWICE improperly terminating [Plaintiff]; and unilaterally issuing a deductive change order without accommodating the additional costs that Resolve [Equipment] demanded [Plaintiff] incur.

(Am. Compl. ¶ 93 (alterations added)). According to Plaintiff, its failure to identify the specific provisions is of no moment because each alleged breach could theoretically be matched up to a provision in the attached Subcontract. (*See* Resp. 5 ("[T]he Amended Complaint specifically identifies duties owed by virtue of the contract itself. For instance, a failure of payment under the contract is a breach of the payment provision of the contract." (alteration added))).

The Court agrees with Plaintiff that while the Amended Complaint is not the most precise pleading, Plaintiff has at least made a lack of payment allegation that corresponds to the Subcontract's payment provisions. *Regal v. Butler & Hosch, P.A.*, 15-cv-61081, 2015 WL 11198248, at *5 (S.D. Fla. Oct. 8, 2015) (finding that plaintiffs had adequately pleaded a breach-of-contract claim by alleging lack of payment of various employment benefits); (*see* Subcontract 8–12 (outlining payment provisions)); *compare Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-Civ, 2008 WL 1803637, at *3–4 (S.D. Fla. Apr. 21, 2008) (engaging in a "careful scrutiny" of the contract to match the plaintiffs' allegations to the contract's terms, but ultimately dismissing when the court was unable to determine which provisions may have been breached).

Moreover, the Court declines to strike alleged breaches of the Subcontract in line-item fashion. *Cf. Brown v. Oceania Cruises, Inc.*, No. 17-22645-Civ, 2017 WL 10379580, at *4 (S.D. Fla. Nov. 20, 2017) (collecting cases). Because Plaintiff alleges a facially plausible breach-of-contract claim regarding the failure to make payment, the Court does not address the remaining alleged breaches of the Subcontract.

### C. Count 5: Negligent Inspection

In Count Five, Plaintiff brings a claim of negligent inspection against Olsen, Skyrise, and Resolve Marine. (*See* Am. Compl. ¶¶ 121–28). Defendants argue Count Five should be dismissed because Plaintiff's allegation as to Resolve Marine violates the independent tort doctrine, Plaintiff has not identified a source for Resolve Marine's duty in tort, and Olsen and Skyrise do not owe Plaintiff a duty in tort. (*See* Mot. 7–9; Reply 3–4). The Court disagrees.

To start, the independent tort doctrine does not bar Plaintiff's negligence claim against Resolve Marine. Under Florida law, "a breach of contract, alone, cannot constitute a cause of action in tort . . . . It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986) (alteration added; citations omitted). To apply, "the [independent tort] doctrine requires contractual privity between the parties." *Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (alteration added; citations omitted); *see also Brooks v. Brooks Consultants, Inc.*, No. 6:22-cv-669, 2022 WL 18493476, at *6 n.10 (M.D. Fla. Nov. 7, 2022) (collecting cases). Because Plaintiff does not allege that a contract exists between it and Resolve Marine, the independent tort doctrine is inapplicable and certainly does not bar a tort claim against this Defendant. (*See generally* Am.

Compl.; *see* Resp. 8 ("[Plaintiff] has no contractual relationship with Resolve Marine." (alteration added)); *see also* Reply 3–4 (omitting argument regarding the independent tort doctrine)).

Next, Plaintiff has identified a source for Resolve Marine's duty in tort — it is the same theory as for Olsen and Skyrise. (*See* Am. Compl. ¶¶ 121–28). Plaintiff alleges Olsen and Skyrise, "each acting as agent/consultants for the County, owed [Plaintiff] a duty, as subcontractor and direct manufacturer of the [u]nits, to fairly, truthfully and properly report the status of the [p]roject to the County and others, in accordance with the requisite standard of care required by the law." (*Id.* ¶ 122 (alterations added)). Plaintiff then alleges that because Resolve Marine "also provided personnel for the inspection of the [u]nits[,]" it "owed the same duties" to Plaintiff as Olsen and Skyrise. (*Id.* ¶ 123 (alterations added)).

Finally, Plaintiff has minimally alleged a negligent inspection claim against Olsen, Skyrise, and Resolve Marine. To sustain a negligence claim under Florida law, a plaintiff must establish: "(1) [e]xistence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains; (2) [f]ailure of the defendant to perform that duty; and (3) [i]njury or damage to the plaintiff proximately caused by such failure." *Lake Parker Mall, Inc. v. Carson*, 327 So. 2d 121, 123 (Fla. 2d DCA 1976) (alterations added; citations omitted). Only the first element is at issue here. (*See* Mot. 8–9; Resp. 7–10; Reply 3–4).

Defendants insist Plaintiff "does not explain *how* Resolve Marine, Olsen, and Skyrise owe [Plaintiff] a duty in tort to inspect its work." (Reply 3 (emphasis in original; alteration added)). Defendants acknowledge that third-party contractors may bring tort claims against supervising design professionals, *see A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397 (Fla. 1973), but argue that Plaintiff has not alleged that Olsen and Skyrise are "supervising engineers[,]" (Mot. 8 (alteration

9

added); *see also* Reply 4).[4] In any case, Defendants argue that Plaintiff cannot state a claim of negligent inspection because Florida appellate courts have declined to extend supervising professionals' tort duty to subcontractors. (*See* Mot. 9 (citing *Spancrete v. Ronald E. Frazier & Assoc., P.A.*, 630 So. 2d 1197 (Fla. 3d DCA 1994); *McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Electric, Inc.*, 582 So. 2d 47 (Fla. 2d DCA 1991)); Reply 4).

Defendants' reliance on these cases is misplaced. Admittedly, in *Spancrete*, Florida's Third District Court of Appeal expressly stated that the "duty of care recognized [by *Moyer*] does not extend to a subcontractor." *Spancrete*, 630 So. 2d at 1198 (alteration added). Yet, the Court finds the cursory analysis in *Spancrete* unhelpful.

First, the *Spancrete* court based its conclusory holding in part on language from *Casa Clara*, a 1993 Florida Supreme Court decision that limited *Moyer* "strictly to its facts." *Id.* at 1197 (quoting *Casa Clara Condo. Ass'n v. Charley Toppino & Sons*, 620 So. 2d 1244, 1248 n.9 (Fla. 1993)). *Casa Clara* has itself since been overruled.[5] Thus, *Spancrete*'s reliance on that case — like Defendants' reliance on *Spancrete* — is inapt.

---

[4] Defendants discuss only Olsen and Skyrise in their argument about the appropriate scope of tort liability for third-party contractors, but because Plaintiff alleges Resolve Marine is liable on the same grounds as Olsen and Skyrise, the Court analyzes Defendants' arguments with respect to all three Defendants. (*See* Mot. 8–9; Reply 3–4; Am. Compl. ¶ 123).

[5] *Casa Clara*'s limitation of *Moyer* was a consequence of the court's expansion of the economic loss rule, which prohibits tort recovery for "disappointed economic expectations, which are protected by contract law[.]" *Casa Clara*, 620 So. 2d at 1246 (alteration added; internal quotation marks and citations omitted). The court in *Moyer* found that third-party contractors who may foreseeably sustain an economic loss proximately caused by an architect or engineer's negligent supervision had a cause of action notwithstanding the absence of privity. *See Moyer*, 285 So. 2d at 402. The court in *Casa Clara*, concerned that "contract law would drown in a sea of tort[,]" sought to limit such exceptions to the economic loss rule. 620 So. 2d at 1247 (alteration added; quoting *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 866 (1986)).

The Florida Supreme Court subsequently veered in the opposite direction, holding in 2013 that the economic loss rule was applicable only to products liability cases. *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013). Neither *Moyer* nor the instant case presents a products liability issue. *See E.C. Goldman, Inc. v. A/R/C Assocs., Inc.*, 543 So. 2d 1268 (Fla. 5th DCA 1989)

Further, the court in *Spancrete* relied on *McElvy* — which Defendants also cite — for the proposition that subcontractors are not owed a duty. *See Spancrete*, 630 So. 2d at 1198 (citing *McElvy*, 582 So. 2d at 49). But the court in *McElvy* did not hold that a plaintiff's status as subcontractor, alone, is dispositive of whether a duty exists under *Moyer*. *See* 582 So. 2d at 49. Rather, the *McElvy* court — as well as other courts analyzing duties owed to subcontractors — assessed both the level of supervisory authority and the relationships between the parties, finding that subcontractors are, in certain circumstances, "one step further removed" than the general contractor in *Moyer*. *Id.*; *see also E.C. Goldman, Inc.*, 543 So. 2d at 1270–72 (analyzing the "nexus" between the parties). This analysis comports with that in *Moyer*, which considered multiple factors to determine if a duty existed, including

> the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Moyer*, 285 So. 2d at 401 (quoting *United States v. Rogers & Rogers*, 161 F. Supp. 132, 135 (S.D. Cal. 1958)).

In fact, to find a duty under *Moyer*, "the core issue is the extent to which the Defendant[s] supervised the Plaintiff or had sufficient control over [its] work to be able to exercise 'economic life or death' over the Plaintiff[,]" rather than a myopic focus on an individual's job title. *Grace & Naeem Uddin, Inc. v. Jacobs Facilities, Inc.*, No. 07-21936-Civ, 2012 WL 12950012, at *5 (S.D. Fla. June 7, 2012) (alterations added; citations omitted); *see also Moyer*, 285 So. 2d at 401

---

(explaining the *Moyer* court analogized to products liability cases in order to "extend[] products liability law to economic losses" (alteration added)); *cf. Tiara Condo. Ass'n*, 110 So. 3d at 406–07 (quoting *Moransais v. Heathman*, 744 So. 2d 973, 984 (Fla. 1999) (Wells, J., concurring) ("[T]he economic loss rule should be limited to cases involving a product which damages itself by reason of a defect in the product[.]" (alterations added)).

("The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility." (quoting *Rogers & Rogers*, 161 F. Supp. at 135–36)).

Here, the Amended Complaint indicates Olsen, Skyrise, and Resolve Marine had supervisory control over Plaintiff because these Defendants "unfairly and in bad faith rejected completed [u]nits that conformed entirely to the Subcontract requirements, often for noncontractual and non-material issues." (Am. Compl. ¶ 22 (alteration added); *see also id.* ¶ 37 ("Based on their erroneous positions pertaining to a small minority of [u]nits, the County Inspectors and Resolve began to wrongfully reject all [u]nits and withhold payments [Plaintiff] had rightfully and contractually earned." (alterations added))). Moreover, Plaintiff alleges the three Defendants were closely involved in the manufacturing process. (*See id.* ¶¶ 33–37, 44–45). This is minimally sufficient to plead that Olsen, Skyrise, and Resolve Marine owed a duty to Plaintiff as supervising engineers. *See Moyer*, 285 So. 2d at 401–02; *Suffolk Constr. Co. v. Rodriguez & Quiroga Architects Chartered*, No. 16-cv-23851, 2018 WL 1335185, at *4–5 (S.D. Fla. Mar. 15, 2018) (finding the plaintiffs had sufficiently alleged each defendant "exerted control" over the plaintiffs to be liable under *Moyer*).

### D. Counts 7 & 10: Interference with Contracts

Plaintiff brings two claims of interference with contract. In Count Seven, Plaintiff alleges that Olsen, Skyrise, and Resolve Marine interfered with Plaintiff's Subcontract with Resolve Equipment by "intentionally and unjustifiably . . . providing inadequate, improper, or outright falsified inspection services and reporting of the [p]roject and otherwise inhibiting [Plaintiff's] work and production." (Am. Compl. ¶ 136). In Count Ten, Plaintiff alleges Olsen, Skyrise,

Resolve Equipment, and Resolve Marine engaged in the same conduct to interfere with Plaintiff's Completion Agreement with Penn National Insurance Company. (*See id.* ¶¶ 157–60).

Defendants advance similar arguments as to both Counts. (*See* Mot. 11–13). Namely, Defendants argue that Plaintiff's tortious interference claims fail because these Defendants are not strangers to the contracts; as it relates to the Subcontract, Defendants argue Resolve Marine is an agent of Resolve Equipment. (*See id.*). Plaintiff asserts that even if Defendants are not strangers to the contracts, its claims should survive because it has adequately alleged that Defendants employed improper means to wrongfully reject units. (*See* Resp. 12–13).

Under Florida law, the elements of a tortious-interference-with-contract claim are: "(1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, and (5) damages resulting from the breach." *CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 21-11183, 2022 WL 3012298, at *5 (11th Cir. July 29, 2022) (alterations adopted; quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1322 (11th Cir. 1998); other citations omitted). As Defendants note (*see* Mot. 11), "[f]or the interference to be unjustified [in a tortious interference claim], the interfering defendant must be a third party, a stranger to the business relationship[,]" *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (alterations added; citations omitted). "Under Florida law, a defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

The "'privilege to interfere' . . . is not absolute." *Salit*, 742 So. 2d at 386 (alteration added). "In those circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper." *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987) (citations omitted). In the case of officers or employees of a contracting party, the privilege is "destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." *Salit*, 742 So. 2d at 386 (citations omitted). Put another way: the "privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract." *Yoder v. Shell Oil Co.*, 405 So. 2d 743, 744 (Fla. 2d DCA 1981) (footnote call number omitted); *see also Making Ends Meet, Inc. v. Cusick*, 719 So. 2d 926, 928 (Fla. 3d DCA 1998).

To be sure, Defendants are not strangers to the Subcontract or the Completion Agreement. According to Plaintiff, Olsen, Skyrise, and Resolve Marine provided supervision on both the Subcontract and the Completion Agreement; and Resolve Equipment (which is a party to the Subcontract and not included in Count Seven), had a financial interest in additional units produced under the Completion Agreement. (*See* Am. Compl. ¶¶ 122–23; 61–64).

But Plaintiff alleges these Defendants "intentionally and unjustifiably" interfered in the two contracts by "providing inadequate, improper or outright falsified inspection services and reporting." (*Id.* ¶¶ 136, 159). Plaintiff also alleges Defendants "intentional[ly] and malicious[ly]" engaged in daily inspections that focused on non-material characteristics to "cover up their own incompetence[;]" and "began doctoring reports . . . to make sure that if one of the inspectors observed a blemish on a [u]nit, all the reports stated the same thing regardless of whether the

14

inspector authoring the [report] observed the same alleged blemish." (*Id.* ¶¶ 43–45, 67 (alterations added)). These statements are sufficient to plausibly plead that Defendants acted with improper means. *See Salit*, 742 So. 2d at 386; *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013) (recognizing that false statements or omissions of material fact may constitute improper means).

Moreover, while the improper means exception "does not apply to the agent of a party to the contract[,]" *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339 (11th Cir. 2020) (alteration added), Plaintiff does not allege that Resolve Marine is an agent of Resolve Equipment (*see generally* Am. Compl.). Defendants insist the Amended Complaint's allegations indicate otherwise. (*See* Mot. 11–12; Reply 7). But Plaintiff asserts Defendants mischaracterize its allegations, which simply state that Resolve Marine "provided personnel for the inspection of the [u]nits [Plaintiff] produced[.]" (Resp. 11–12 (alterations added; quoting Am. Compl. ¶ 123)). Reading the Amended Complaint in the light most favorable to Plaintiff — as the Court must, *see Brooks*, 116 F.3d at 1369 — the Court cannot determine that Resolve Marine is an agent of Resolve Equipment (*see generally* Am. Compl.). Therefore, apart from the pleading's deficiencies already explained, Plaintiff sufficiently alleges that Defendants interfered with its contracts by engaging in improper means.

### E. Count 8: Misrepresentation

Plaintiff alleges that Defendants Resolve Equipment, Resolve Marine, Olsen, and Skyrise "knowingly made misrepresentations of material fact" to Plaintiff in order to "induce [Plaintiff] to remobilize, continue working and to continue to incur costs to produce [u]nits pursuant to the Subcontract." (Am. Compl. ¶¶ 139–40 (alterations added)). Defendants argue this allegation is improper because it is not pleaded with particularity; and, with respect to Resolve Equipment and

Resolve Marine, violates the independent tort doctrine. (*See* Mot. 13–14).[6] Plaintiff asserts its representations are sufficiently pleaded and that the independent tort doctrine is inapplicable because its claim pertains "only to post-termination conduct." (Resp. 14–15).

The Court agrees with Defendants that Plaintiff's misrepresentation claim has not been pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). (*See* Mot. 13). A plaintiff bringing a claim that sounds in fraud must allege

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation and internal quotation marks omitted); *accord Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). This particularity rule alerts defendants to their precise misconduct and protects defendants against baseless charges of fraudulent behavior. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).

"Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks*, 116 F.3d at 1371 (alterations adopted; internal quotation marks and citations omitted). Plaintiff has done nothing more than allege Defendants made material misrepresentations, including "falsif[ying] records, defam[ing] [Plaintiff], intentionally reject[ing] conforming [u]nits, and creat[ing] false claims against" Plaintiff. (Am. Compl. ¶¶ 139, 143). Plaintiff does not describe precisely what statements were made, which Defendants made

---

[6] Because Plaintiff fails to allege when and who made the alleged statements relevant to Count Eight, the Court is unable to evaluate Defendants' argument under the independent tort doctrine.

which specific statements, or the time and place of each statement. *See Ziemba*, 256 F.3d at 1202. This is plainly insufficient to comply with Rule 9(b)'s requirements.

### F. Count 9: Promissory Estoppel

Plaintiff brings a claim of promissory estoppel in Count Nine. (*See* Am. Compl. ¶¶ 150–56). To sustain a cause of action for promissory estoppel, a plaintiff must plead three elements: "[(1)] that the plaintiff detrimentally relied on a promise made by the defendant, [(2)] that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff . . . and [(3)] that injustice can be avoided only by enforcement of the promise[.]" *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999) (alterations added; citation omitted).

Plaintiff alleges that following the first termination of the Subcontract, Olsen, Skyrise, Resolve Equipment, and Resolve Marine "invited [Plaintiff] back to the [p]roject and stated their commitment that the terms of the Subcontract would govern [Plaintiff's] contractual requirements until [Plaintiff] completed its scope of work." (Am. Compl. ¶ 63 (alterations added)). Plaintiff further alleges it relied on this promise to enter into the Completion Agreement with its performance surety, Penn National Insurance Company; that Agreement directly states Plaintiff would perform "pursuant to the terms of the *Subcontract*[.]" (Completion Agreement 3 (emphasis in original); *see* Am. Compl. ¶¶ 150–56). Because the four Defendants "never accepted the additional [u]nits[,]" and "Resolve issued a unilateral deductive change order" reducing the number of units it would accept, Plaintiff suffered "millions of dollars in damages[.]" (Am. Compl. ¶¶ 83–84, 88, 150–56 (alterations added)). Therefore, failure to compensate Plaintiff for its actions in reliance would be "unfair, inequitable and unjust." (*Id.* ¶ 155).

According to Defendants, these allegations fail to set out a promissory estoppel claim because Plaintiff does not plead what promises were made by the four Defendants; and promissory estoppel is not available against Resolve Equipment, which was in privity with Plaintiff by virtue of incorporation of the Subcontract into the Completion Agreement. (*See* Mot. 14–15). Plaintiff addresses only the first argument in its Response, stating the Amended Complaint sufficiently alleges the four Defendants promised to "adhere to the standards of the Subcontract inspecting, approving and accepting [u]nits produced as part of [Plaintiff's] putative remobilization." (Resp. 15 (alterations added; quoting Am. Compl. ¶ 151)).

The Court first addresses Defendants' argument concerning contractual privity. Promissory estoppel is unavailable where there is a valid contract covering the parties' dispute. *See Jones v. Miami-Dade Cnty.*, No. 03-20674-Civ, 2005 WL 2456884, at *10 (S.D. Fla. Apr. 7, 2005). That is because "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (alteration added; quoting *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990)).

The Amended Complaint is unclear as to what contractual relationship existed between Plaintiff and Resolve Equipment at which point in time; the Court finds Plaintiff's promissory estoppel claim difficult to follow. Plaintiff alleges it entered into a Subcontract with Resolve Equipment, it was terminated from the Subcontract, it entered into a new Completion Agreement with its surety (rather than any of the Defendants) that incorporated the terms of the previous Subcontract, and Resolve Equipment then terminated Plaintiff a second time. (*See* Am. Compl. ¶¶ 14, 60, 64, 79). If Resolve Equipment was able to terminate Plaintiff a second time, it seems

that by the very allegations of the Amended Complaint, Plaintiff was in privity of contract with Resolve Equipment — presumably under the terms of the Subcontract — during Plaintiff's remobilization. This would bar a promissory estoppel claim against Resolve Equipment. *See Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's*, No. 09-60796-Civ, 2011 WL 13175618, at *5–6 (S.D. Fla. Feb. 28, 2011) (dismissing promissory estoppel claim where the conduct complained of was governed by valid contracts).

In any case, because Plaintiff does not address contractual privity in its Response, the Court deems the argument admitted. *See Guzman v. City of Hialeah*, No. 15-23985-Civ, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in [its] responsive brief, fails to address [its] obligation to object to a point raised by the defendant implicitly concedes that point." (alterations added; citations omitted)).

As for the remaining three Defendants — and reading the Amended Complaint in the light most favorable to Plaintiff — Resolve Marine, Olsen, and Skyrise were never in contractual privity with Plaintiff despite having the power to reject units. (*See generally* Am. Compl.). Plaintiff has further alleged these Defendants promised to inspect, approve, and accept units according to the standards set out in the Subcontract if Plaintiff remobilized. (*See id.* ¶¶ 63, 151). This is a promise "sufficiently definite in time or term or reasonableness to comply with promissory estoppel principles." *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 925 (Fla. 1989).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion **[ECF No. 19]** is **GRANTED in part**. The Amended Complaint [ECF No. 5] is dismissed without prejudice. Plaintiff has until **July 6, 2023** to file its final amended complaint.

19

**DONE AND ORDERED** in Miami, Florida, this 26th day of June, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record